IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN HNAT<br>51 Percheron Drive<br>Spring City, PA 19475<br><br>    Plaintiff,<br><br>v.<br><br>LINCOLN NATIONAL CORPORATION,<br>d/b/a LINCOLN FINANCIAL GROUP<br>1500 Market Street<br>West Tower, Suite 3900<br>Philadelphia, PA 19102<br><br>    and<br><br>DELAWARE MANAGEMENT<br>BUSINESS TRUST, d/b/a DELAWARE<br>INVESTMENTS, INC.<br>One Commerce Square<br>Philadelphia, PA 19103<br><br>    Defendants. | CIVIL ACTION NO.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**I.      PRELIMINARY STATEMENT**

Plaintiff, Susan Hnat, brings this action against Lincoln National Corporation, d/b/a Lincoln Financial Group and Delaware Management Business Trust, d/b/a Delaware Investments, Inc.  Ms. Hnat alleges sex discrimination, including sexual harassment and hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), et seq. ("Title VII") and the

1

Pennsylvania Human Relations Act, as amended, 43 P.S. §951, et seq. ("PHRA").  Ms. Hnat seeks compensatory damages, punitive damages and other statutory relief as permitted under state and federal law.

## II. PARTIES

1. Plaintiff, Susan Hnat, is an individual and citizen of the Commonwealth of Pennsylvania residing therein at 51 Percheron Drive, Spring City, Pennsylvania 19475.

2. Plaintiff is female.

3. Defendant, Lincoln National Corporation, d/b/a Lincoln Financial Group ("Defendant Lincoln"), is an Indiana corporation with its principal place of business at 1500 Market Street, West Tower, Suite 3900, Philadelphia, Pennsylvania 19102.

4. Defendant, Delaware Management Business Trust, d/b/a Delaware Investments, Inc. ("Defendant Delaware"), is a Delaware corporation with its principal place of business at One Commerce Square, Philadelphia, Pennsylvania 19103.

5. Defendant Delaware is a wholly-owned subsidiary of Defendant Lincoln.

6. Upon information and belief, Defendant Lincoln controls the employment, personnel and human resources operations and practices for Defendant Delaware.

7. Upon information and belief, Defendant Lincoln controls some or all of the financial matters of its subsidiaries, including Defendant Delaware.

8. Upon information and belief, employees of Defendant Delaware are considered to be employees of Defendant Lincoln, and are governed by the same employment practices.

9. At all times material hereto, Defendant Lincoln acted as an "employer" within the meaning of the anti-discrimination laws that are the subject of this suit.

10. At all times material hereto, Defendant Delaware acted as an "employer" within the meaning of the anti-discrimination laws that are the subject of this suit.

11. At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the anti-discrimination laws that are the subject of this suit.

12. At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen and/or employees, acting within the course and scope of their employment and in furtherance of Defendants' business.

## III. JURISDICTION AND VENUE

13. The causes of action set forth herein arise under Title VII and the PHRA.

14. The District Court has jurisdiction over the cause of action set forth in Count I pursuant to 28 U.S.C. §1331. The District Court has supplemental jurisdiction over the cause of action set forth Count II under 28. U.S.C. § 1367.

15. Venue is proper under 28 U.S.C. §1391 and 42 U.S.C. § 2000

(e)(5)(f)(3).

16. At all times material hereto, Defendants employed more than fifteen (15) employees.

17. On or about September 23, 2003, Plaintiff filed a Charge of Discrimination alleging sex discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross filed with the Pennsylvania Human Relations Commission ("PHRC").  The Charge of Discrimination complained of acts of sex discrimination described herein.  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the 09/03 Charge of Discrimination filed by Plaintiff.

18. On or about October 10, 2003, Plaintiff filed a Charge of Discrimination alleging sex discrimination and retaliation with the EEOC, which was PHRC.  The Charge of Discrimination complained of acts of sex discrimination and retaliation described herein.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of the 10/03 Charge of Discrimination filed by Plaintiff.

19. On or about March 17, 2005, the EEOC issued Plaintiff a Dismissal and Notice of Rights letter on the above-referenced Charges of Discrimination.  Attached hereto, incorporated herein and marked as Exhibit "3" is a true and correct copy of a Dismissal and Notice of Rights.

20. Plaintiff has fully complied with all administrative prerequisites for the bringing of this action.

## IV. FACTUAL ALLEGATIONS

21. In or about April, 1997, Plaintiff was hired by Defendants in the position of Internal Sales Coordinator.

22. At all times material hereto, Plaintiff performed her job duties in a highly competent matter.

23. In or about September, 2000, Plaintiff was promoted to Client Service Associate, Client Services Division.

24. After Plaintiff was promoted to Client Service Associate, Client Services Division, Plaintiff began reporting to Gordon Searles, Vice President of Client Services.

25. At all times materials herein, Mr. Searles reported to Renee Campis, Executive Vice President of Retirement Financial Services.

26. Mr. Searles and Mr. Campis engaged in inappropriate, unwelcomed and sexually explicit conduct towards female employees of Defendants.

27. Mr. Searles engaged in inappropriate, unwelcomed and sexually explicit conduct towards Plaintiff, including but not limited to:

    a) making inappropriate advances and sexual comments towards Plaintiff including, by way of example, telling Plaintiff: "I would like to lay you out on my desk and f*ck the sh*t out of you;"

    b) coming into Plaintiff's hotel room on a business trip, taking off all of his clothes, and physically assaulting Plaintiff;

    c) exposing his penis to Plaintiff;

    d) telling Plaintiff that she sexually aroused him;

e)    inappropriately touching Plaintiff;

f)    locking Plaintiff in a car with him during a business trip and masturbating, after Plaintiff refused his demand of her to perform oral sex on him; and,

g)    threatening Plaintiff and her family if she discussed the inappropriate conduct by employees of Defendant.

28.    Prior to May, 2003, a female employee made a complaint of sexual harassment against Mr. Searles; however, Mr. Searles remained employed at his Vice President position.

29.    After Mr. Searles learned that a complaint of sexual harassment had been made by a female employee of Defendants, Mr. Searles advised Plaintiff that he wanted to physically harm that employee and that he would "kill" Plaintiff and destroy Plaintiff's family if she also complained to Human Resources about him.

30.    On or about July 7, 2003, Joan Ebert, Vice President of Client Services and Christine Pollick, Vice President of Client Services, two coworkers who also experienced sexual harassment by Mr. Searles and Defendants, made a complaint to Mary Carruth from the Human Resources Department, relaying, among other things, the inappropriate conduct of Mr. Searles and the fear they had for their physical well being as a result of making a sexual harassment complaint to Human Resource.

31.    After Ms. Pollick and Ms. Ebert complained about Mr. Searles, Mr. Searles was not immediately terminated, but rather placed on an administrative leave.

32.    Mr. Searles was finally terminated on or about July 11, 2003.

33. On September 23, 2003, Plaintiff filed a Charge of Discrimination with the EEOC alleging that she was subjected to sex discrimination by Defendants based on her sex. A copy of the Charge of Discrimination was hand-delivered to Defendants the same day.

34. Six (6) days later after Defendants learned that Plaintiff had filed a Charge of Discrimination with the EEOC, on or about September 29, 2003, Defendants advised Plaintiff that her position was now eliminated and told Plaintiff she could interview for new, open positions with Diane Anderson, then Senior Vice President of Operations.

35. During Plaintiff's interview, Ms. Anderson made it clear to Plaintiff that she was not going to be awarded any position by Defendants.

36. Plaintiff was not offered any position by Defendants.

37. On or about October 7, 2003, approximately two (2) weeks after filing a Charge of discrimination with the EEOC, Plaintiff was terminated.

38. At all times material herein, Defendants knew or should have known about Mr. Searles' inappropriate conduct and his propensity to engage in sexual harassment of female employees, including subordinates, as well as his propensity to retaliate against female employees who complained about his conduct.

39. At all times material herein, Defendants were negligent in their hiring, supervision and training of Mr. Searles.

40. At all times material herein, Defendants knew or should have known about the inappropriate conduct of Mr. Campis, including his failure to properly supervise Mr. Searles.

41.   At all times material herein, Defendants were negligent in their hiring, supervision and training of Mr. Campis.

42.   Defendants created a hostile work environment for Plaintiff based on her sex and retaliated against Plaintiff based on her complaining of sexual harassment.

43.   Defendants intentionally discriminated and retaliated against Plaintiff.

44.   Plaintiff's sex was a determinative and motivating factor in Defendants' improper, harassing and discriminatory treatment of Plaintiff while Plaintiff was employed at Defendants, and in Defendants' termination of Plaintiff.

45.   Plaintiff's complaining about sexual harassment was a determinative and motivating factor in Defendants' termination of Plaintiff.

46.   At all times material hereto, Defendants failed to take appropriate steps to prevent, investigate or remedy the hostile work environment which existed for its employees, including Plaintiff.

47.   As a direct and proximate result of the improper, harassing, discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self esteem, mental anguish and loss of life's pleasures, the full extent of which is not known at this time.

48.   The conduct of Defendants, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendants.

## COUNT I

49. Plaintiff incorporates herein by reference paragraphs 1 through 48 above, as if set forth herein in their entirety.

50. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

51. Said violations were willful and intentional and warrant the imposition of punitive damages.

52. As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the injuries, damages and losses set forth herein and has incurred attorney's fees and costs.

53. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

54. No previous application has been made for the relief requested herein.

## COUNT II

55. Plaintiff incorporates herein by reference paragraphs 1 through 54 above, as if set forth herein in their entirety.

56. Defendants, by the above improper, discriminatory and retaliatory acts, have violated the PHRA.

57. Said violations were intentional and willful.

58. As a direct and proximate result of Defendants' violations of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorney's fees and costs.

59. Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

60. No previous application was made for the relief requested herein.

**RELIEF**

WHEREFORE, Plaintiff seeks damages from Defendants, and equitable relief relating to the conduct of Defendants, and specifically prays that the Court grant the following relief to the Plaintiff by:

a) declaring the acts and practices complained of herein to be in violation of the Title VII;

b) declaring the acts and practices complained of herein to be in violation of the PHRA;

c) enjoining and restraining permanently the violations alleged herein;

d) entering judgment against Defendants and in favor of the Plaintiff in an amount to be determined;

e) awarding compensatory damages to make Plaintiff whole for all lost earnings, earnings capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

f) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

g) awarding punitive damages to Plaintiff under Title VII;

h) awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA;

i) awarding Plaintiff the costs of suit, expert fees, other disbursements and reasonable attorneys' fees; and,

j) granting such other and further relief as this Court may deem just, proper or equitable including other injunctive and equitable relief providing restitution for past violations and preventing future violations.

**CONSOLE LAW OFFICES LLC**

BY: <u>s/ Stephen G. Console</u>
    Stephen G. Console
    Laura C. Mattiacci
    1525 Locust Street, 9th Floor
    Philadelphia, PA 19102
    (215) 545-7676

    Attorneys for Plaintiff,
    Susan Hnat

Dated: June 10, 2005